JULIA MADDEN v. LOUISVILLE, NEW ORLEANS AND TEXAS
RAILWAY CO.

1. EMINENT DOMAIN.   *Condemnation by ministerial officers.   Record thereof.*
   When land is condemned by application to a mere ministerial officer, as a
   chancery clerk in vacation, and there is no judicial action by a competent
   court thereon, it is material to the validity of the condemnation that the
   record thereof affirmatively show strict compliance with the terms of the
   law authorizing the proceeding.

2. SAME.   *Condemnation before ministerial officer.   Disinterested commissioners.*
   In such a proceeding before a ministerial officer, if the statute or charter
   provides that the appraisement shall be by disinterested commissioners,
   and the record fails to show that the commissioners who acted were disin-
   terested, there has not been a lawful condemnation.

3. SAME.   *Requirements of appellee's charter.   What record must show.*
   The charter of the New Orleans, Baton Rouge, Vicksburg and Memphis R.
   R. Co. (Acts 1882, p. 920), consolidated into the Louisville, New Orleans
   and Texas Ry. Co., requires that commissioners to appraise condemned land
   be disinterested: and if the record of condemnation proceedings, had
   before a chancery clerk in vacation, fail to show that the commissioners
   were disinterested, the condemnation is void.

4. ESTOPPEL.   *Claim of land and damages.   When owner not put to election.*
   Where one's land, sought to be condemned for a railroad company, has been
   appraised, and, pursuant to the charter, the award is paid into the chancery
   court, and is there attached as the money of another, and the owner, who has
   appealed from the decision of the appraisers, interposes a claim in the
   attachment suit to the money, and is thereafter deforced of the land by
   the company, which secures a dismissal of the appeal, such owner is not
   estopped to bring ejectment for the land, merely because of such claim and
   the pendency of the claimant's issue as to the money.

5. SAME.   *Equivocal steps; when deemed precautionary merely.   No final election.*
   The interposition under such circumstances of a claim to the money, the
   owner holding possession of the land, is to be deemed merely precaution-
   ary, and before a judgment thereon in favor of such claimant and a receipt
   of the money, it will not be treated as an election by the landowner to
   abandon the land and look alone to the award.

6. ELECTION.   *Doctrine of.*
   The doctrine of election depends not on technical rules, but upon the princi-
   ples of equity and justice.   There must be some distinct and unequivocal
   act evincive of a choice.

7. ELECTION.   *No election without full knowledge of facts.  Nor in case of misapprehen-
sion of legal rights.*

   An election made in ignorance of material facts is not binding when no other
   person's rights have been affected; nor is an election binding if made in
   ignorance or misapprehension of the actor's legal rights.

8. SAME.   *When knowledge of legal rights must be shown.*

   An election by matter *in pais* can only be shown by plain, unequivocal acts,
   under full knowledge of the circumstances, and the party's rights.  In case of
   equivocal acts, knowledge of legal rights will not be presumed but must
   be shown.   Especially is this true where the opposite party has not been
   misled and has taken no action in consequence of the act invoked as an
   estoppel.

9. ESTOPPEL IN PAIS.   *When applied.*

   Estoppel *in pais* only arises when manifest justice and equity, as respects the
   rights of another, require its application.

APPEAL from the circuit court of Warren county.

HON. RALPH NORTH, Judge.

Ejectment by appellant, Julia Madden, against the appellee, The
Louisville, New Orleans and Texas Railway Co.   The defendant's
title to the land in controversy depends upon the validity of cer-
tain proceedings by which it was condemned, and under which con-
demnation proceedings defendant took possession and claims title.
The statute authorizing and regulating the condemnation is found
in the charter of the " New Orleans, Baton Rouge, Vicksburg and
Memphis Railroad Co.," approved March 9, 1882.   See Acts
1882, 920.   By authority of a subsequent act of the legislature
(Acts 1884, 936) this company was consolidated with the " Mem-
phis and Vicksburg Railroad Company " and the " Mississippi
Valley and Ship Island Railroad Company," and the consolidated
roads took the name of " The Louisville, New Orleans and Texas
Railway Company," and this company possessed the rights and fran-
chises given in the above-mentioned charter.   The provision
of said charter in reference to condemning right of way, etc., is as
follows :

" That the company be, and is hereby authorized and empowered,
to enter upon, take and hold any land or premises whatever,
whether by purchase, grant, donation, devise, or otherwise, that

may be necessary and proper for the construction and working of said road, not exceeding fifty feet in width on each side of the line of its railroad, unless a greater width be required for excavation or embankment ; and also any lands or premises that may be necessary for turnouts, side tracks, standing places for cars, depots, station houses, works, and machine shops, and any other structures required in the construction and security and working of said railroad ; and said company shall have the right to cut and remove trees, * * * etc. ; and in case the owners of such lands and premises cannot agree with said company as to the value of the land taken or to be taken for the use of the said road, the value thereof shall be determined by the appraisal of three disinterested commissioners, who may be appointed upon the application of either party to the chancery court of the county in which the lands or premises to be taken lie ; and the said commissioners shall appraise in their assessment of damages such premises at what would have been the value thereof had not the road been built ; and upon the return into court of such appraisement, and upon the payment into the same of the estimated value of the premises taken, for the use and benefit of the owners thereof, said premises shall be deemed to be taken by said company, which shall acquire full title to the same for the purposes aforesaid.   Either party feeling aggrieved at such appraisement may, within thirty days after the same has been returned into court, file an appeal therefrom, and demand a jury of twelve men to estimate the damages sustained ; but such appeal shall not interfere with the right of the said company to enter upon the premises taken, or to do any act necessary and proper in the construction of its road ; and the party appealing shall give bond, with sufficient security for the payment of costs that may arise from such appeal ; and in case the party appealing does not obtain a verdict increasing or diminishing, as the case may be, the award of the commissioners, such party shall pay the whole cost incurred by the appellee as well as his own, and payment into court for the use of the owner of the premises taken of a sum equal to that finally awarded shall be held to vest in said company the title of said land and the right to use the same ; * * * and in case any of the lands

to be taken as aforesaid shall be held by an infant, *femme covert, non compos*, or insane person, or persons residing without the state, or subject to legal disability, the court may appoint a guardian for such party, to appear in proper person, who shall give bond, etc., and who may represent in court the person disqualified or residing without the state when the proceedings shall be had in reference to the appraisement of the premises, etc."

By an act of the legislature, approved March 15, 1884, which does not appear in the published laws, the above section was amended so as to confer upon the chancery clerk the power to perform all the duties and acts required of, or permitted to be done by, the chancery courts, whenever the proceedings for condemnation should be commenced or done in vacation. It was also provided that five days notice of the condemnation should be given to the landholder when the petition was filed by the railroad company; and the appeal provided for should be made out and filed in the office of the chancery clerk within ten days after the return of the award. Such appeal was to be tried by a jury of freeholders to be summoned into the chancery court at its next regular session.

This cause was submitted along with another for trial before the court, both sides waiving a jury, and upon an agreed statement of facts, which is as follows:

1. It is agreed that the foregoing cases shall be submitted to the court for trial and adjudication in lieu of a jury upon the following agreed facts:

2. Luke Madden, a resident of the town of Delta, La., was on the 17th day of February, 1886, the owner in his own right and title of the lands described in the declarations in these cases.

3. On said 17th day of February, 1886, and while he was yet the owner, the defendant company, having failed to agree with him on a price for the same, instituted proceedings to condemn said property under its charter, and the amendments thereto, which proceedings were prosecuted to a finality; and defendant's title to the lot in controversy depends for its validity upon the legality of that proceeding and subsequent steps taken by the parties, as shown hereafter.

4. The only papers ever filed in the cause are : 1st. A petition to the clerk of the chancery court of Warren county for the appointment of commissioners to assess the damages, dated February 17, 1886. 2d. An order appointing commissioners, bearing date February 27, 1886. 3d. A report from such commissioners fixing the damages in favor of Luke Madden at seven hundred dollars, dated March 6, 1886.

5. On the day the petition was filed the attorneys for the railroad company wrote a letter to Luke Madden and sent same to him by mail at Delta, inclosing to him a notice that the railroad company would on the 27th day of February apply to condemn the lot in question, and that if he desired he could be present in person or by attorney, and that if he did not so appear they would have a guardian appointed to represent him. This notice was signed by the attorneys of the company, and was received by Madden in due course of mail. He did not respond or attend when the commissioners were appointed. The latter were appointed in his absence, and without his knowledge or consent. The attorneys for the company did not have a guardian appointed to look after his interest, as they wrote him they would do.

6. On March 1, 1886, Madden, in consideration of an alleged debt due by him to his wife, conveyed the lot to her by deed, duly signed and executed in all respects, and the same was acknowledged and duly recorded the same day in the chancery clerk's office of Warren county, in the deed records.

7. The commissioners met, by agreement among themselves, on the premises described in the declaration, on March 6, 1886, and assessed the damages as aforesaid on this lot and a large number of other lots in that neighborhood, they having been appointed as commissioners in those cases also.

8. The commissioners were not sworn before entering upon the discharge of their duties as such commissioners, and made the assessment without having taken any oath in regard thereto, of any kind.

9. No notice was given by the commissioners, by the attorneys for the railroad company, or any one else to either Luke Madden or

Julia Madden, of the time and place when and where the commissioners would meet for the purpose of making the assessment, and Julia Madden was not there.

10. A few days prior to the time the commissioners met to make the assessment, Luke Madden saw in the local columns of a newspaper that the commissioners would meet on the sixth day of March to make the assessment in all the cases mentioned, and came over and was present when the commissioners were present, and walked over the ground. He was asked by one of them what his property was worth, and answered two thousand five hundred dollars; that he paid for it six hundred and fifty dollars about ten years before ; that it was his wife's property and he did not think she wanted to dispose of it at all ; that they had bought it for a home for themselves.

11. The commissioners took no evidence of the value of the lots except on the ground as they walked over it, and then only in the informal manner stated above of asking Luke Madden what his lot was worth, to which he replied as above. No sworn evidence of any kind was offered by Madden, or called for by the commissioners. But the commissioners asked him if he had anything further to say, and he said " no."

12. Shortly after the report of the commissioners was filed, the defendant company paid the amount of the award into court pursuant to the provisions of its charter, to the credit of Luke Madden, whereupon it was immediately attached and garnished by a creditor of Luke Madden, Messrs. Miller, Smith & Hirsch, the attorneys for the railroad company in this condemnation proceeding, acting as the attorneys for the attaching and garnishing creditor. A garnishment was also served on the L. N. O. & T. Ry. Co., by said creditor. After her appeal had been taken, and at the term to which the writ of attachment was made returnable, Julia Madden filed her claimant's issue, and claimed as hers the money paid into court as the award of the commissioners. Mrs. Madden's reason for claiming the money was that she had been advised by her attorney that her appeal was too late and would be dismissed,

but this reason was not known to the defendant company. The attachment writ, garnishment with return, and the claim filed by Julia Madden are all made parts of these agreed facts. The whole proceeding is now pending and undetermined in the circuit court of Warren county, Miss.

13. On the twelfth day after the report of the commissioners was filed Luke Madden and Julia Madden jointly took an appeal from the decision of the commissioners, because of their dissatisfaction at the amount awarded, to the chancery court of Warren county to obtain a new assessment, but their appeal was, on motion of the defendant, dismissed because taken too late, the time fixed by the amendment to the charter for appeals being ten days. The appeal and order are made a part of these agreed facts.

14. The condemnation proceedings were had under an act of the legislature of Mississippi entitled " An Act to incorporate the N. O., B. R. & V. and M. R. R. Co." (Acts 1882, p. 920) and amendments thereto, said company having been consolidated into the defendant company.

15. On the 1st day of March, 1887, the defendant company deforced the plaintiff's tenant, and took possession of the said lot, and put a track on the same, and tore down the house thereon, worth two hundred and fifty dollars, and have ever since held and now hold the same to the exclusion of the plaintiff.

16. While the foregoing facts are admitted to be true as stated, the competency, admissibility, and relevancy of such facts are reserved, if such reservation be necessary, for the consideration and adjudication of the court trying the case.

The court upon the pleadings and agreed facts gave judgment for the defendant, and the plaintiff appeals.

*McCabe & Anderson,* for appellant.

We claim that the condemnation proceedings were illegal and void for the following reasons :

1. Because the record does not show affirmatively any legal notice to the landowner of the time and place when and where the commissioners were applied for and appointed.

2. Because of the failure by appellee to appoint a guardian pursuant to the provisions of its charter, defendant being a non-resident of the state.

3. Because the record does not show affirmatively that the commissioners were disinterested, as required by appellee's charter.

4. The order making the appointment does not fix the time and place when and where the commissioners should meet for the purpose of assessing damages.

5. The record does not show affirmatively any notice to said Julia Madden of the time and place of the meeting of the commissioners.

6. The record does not show that the commissioners were sworn before entering upon the discharge of their duties as such commissioners.

7. The record does show affirmatively that no evidence was taken by the commissioners as to the value of the property to be taken.

8. Because the damages were assessed and paid into court to the credit of Luke Madden, and not to Julia Madden, who was at the time of the assessment the owner of the property.

9. Because the evidence fails to show any compensation to the appellant, in which case only, the title can be divested out of her and vested in the appellee.

I. The failure to give notice of the time and place of the appointment of commissioners.

No person shall be deprived of life, liberty, or property except by due process of law.   Constitution of Miss., art. i, § 2 ; art. xiv, § 1 Const. U. S., amendments.

"Due process of law" is its regular administration through courts of justice by a timely and regular course of proceeding to judgment and execution.   As a rule it includes parties, regular pleadings and trials, according to a settled course of proceeding.   It means, according to Lord Coke, being brought in to answer according to the law of the land.   It requires of a person to be brought into court and have an opportunity to prove any fact for his protection.   Cooley on Con. Lim. 351 *et seq.;* 95 U. S.

(Co-op. ed.), book 24, 436 ; 24 Am. Dec. 537 ; *Brown* v. *Board Levee Comrs.*, 50 Miss. 468.

Whatever may be said of " due process of law," one thing is certain, there must be *notice* to the opposite party. *The R. R. Tax Cases,* 13 Fed. Rep. 750 ; *Burns* v. *M. R. R. Co.*, 15 Fed. Rep. 183 ; *Brown* v. *Hummel,* 47 Am. Dec. 434 and note ; *F. R. S. Co.* v. *Foster,* 48 Am. Dec. 269 ; 1 Rorer on R. Rs. 353.

Notice is necessary even where the charter does not require it expressly. 66 Am. Dec. 636, where, as in this case, the charter requires an effort on the part of the railroad company to agree with the landowner before instituting its proceeding to condemn, the right to notice is implied. Mills' Em. Dom. 96. The charter allows either party an appeal. This implies a right to notice. Ib. 96 ; Acts 1882, 922, 923. But the amendment to the charter absolutely requires notice. The only notice in this case was by private letter from the defendant's attorneys mailed to Luke Madden. It did not emanate from any court or officer, and was not intended to be official. The word notice means legal notice. Notice to a non-resident should be by publication. Such notice is jurisdictional.

II. The failure to appoint a guardian. Every requisite of the statute having a semblance of benefit to the owner must be strictly followed or the proceeding will be void. Mills' Em. Dom. 84.

III. The failure of the record to show that the commissioners were " disinterested." This requirement is jurisdictional and must be complied with, and compliance must appear on the face of the record. Mills' Em. Dom. 227 ; *Allen* v. *Levee Board,* 57 Miss. 163; 60 Miss. 93; *White* v. *M. B. & A. R. R. Co.*, 64 Miss. 571.

IV. Failure of the clerk to name the time and place for the meeting of the commissioners to assess damages was also fatal. Mills' Em. Dom. 227.

V. The failure by the commissioners to give the owners notice of the time and place when and where they would meet was fatal.

In addition to the foregoing authorities we submit, Cooley Con. Lim. 563 ; Pierce on Railroads 182. The cases cited for appellee

to show such notice is unnecessary, viz.: *Stewart* v. *Board Police,* 25 Miss. 482, and *N. O., J. & G. N. R. R. Co.* v. *Hemphill,* 35 Miss. 17, are not authority now. No legislation then required notice. It is different now, and such notice is required by our laws as revised and by the amendment to the defendant's charter.

Luke Madden's presence on the land at the time of the inspection by the commissioners was not a waiver. He was not the owner, nor is it shown that he was representing his wife. She did not acquire title *pendente lite* because there was no suit pending—could be none until due notice was served. If the proceeding had been regular and due notice served on Luke Madden, she would, of course, have been such a purchaser and have taken *cum onere. Allen* v. *Poole,* 54 Miss. 323 ; *Allen* v. *Mandaville,* 4 Cush. 397.

VI. An orderly administration of justice, and a respectful consideration of the rights of litigants demand that the commissioners be sworn. The exact point is decided. Mills' Em. Dom. 227.

VII. The commissioners should have acted on some evidence and given notice to the owner to introduce any evidence he wished as to value. Here we have unsworn commissioners acting on unsworn evidence. See opinion, Justice Field in 13 Fed. Rep., *supra.*

VIII. The damages were improperly awarded to Luke Madden. Julia Madden was the owner, and this was told to the commissioners, and the defendant company had constructive notice of it from the record of the deed. Mills' Em. Dom. 76 ; Pierce on Railroads 182.

IX. The proceeding is void because it has not resulted in any compensation to the owner. Art. i, § 10, Const. Miss. It is an admitted fact that the owner has not received up to this time any compensation. See *Pearson* v. *Johnson,* 54 Miss. 260 ; *Ryan* v. *L., N. O. & F. Ry. Co.,* 64 Miss. 399 ; *Isom* v. *M. C. R. R. Co.,* 36 Miss. 300; *Brown* v. *Beatty,* 34 Miss. 227. So much of the charter as authorizes payment into court, instead of to the owner, is unconstitutional and void.

Appellant is not estopped by her action in filing a claimant's issue for the money deposited and attached by creditors of Luke

Madden. A simple definition of estoppel will refute such an idea. All the following elements must be presented in order to estop one by his conduct. 1. There must be a representation of, or the concealment of material facts. 2. The representation must have been made with a knowledge of the facts. 3. The party to whom it was made must have been ignorant of the true matter. 4. It must have been made with the intention that the other party should act upon it. 5. The other party must have been induced to act upon it. Bigelow on Estop. 480.

The authorities cited by counsel do not support the contention. They do hold that the *receipt of the money* will estop the owner from setting up *irregularities.*

Our answer is two-fold: 1. We have received no money. 2. We do not complain of irregularities, but of jurisdictional defects.

There is nothing in the doctrine of election as affecting appellant's rights. Finding that her appeal was too late, and would be dismissed, and believing that the condemnation proceedings were regular and valid, and that a creditor of her husband was about to secure the money, appellant did as any one else would under the circumstances: filed her claim for the money. In the meantime she kept possession and refused to surrender the lot, and never did lose possession until deforced. She had a right to possession until compensated. By being deforced of the land, she was left without the land or the money, and she instituted this proceeding to recover possession. When the claim for the money was made she was in possession, refusing to surrender, and the right to this suit did not accrue until a year afterward. Until compensated, she has a right to litigate in any and all the courts until satisfaction is awarded by some of them, when, of course, her right to litigate will cease.

In conclusion, we suggest that the company is to blame for all the trouble. After payment into court, appellant might have accepted the money if allowed to do so ; but the company would not allow this. Its attorneys immediately garnished the debt, and from that time to this it has thrown every possible obstacle in her way to prevent compensation to her. It is responsible for the acts of its

agents, and it is plain they never meant that this money should go to her.   It was intended for another.   The company cannot avail itself of its own wrong, or complain of the trouble it has caused.

We submit that the judgment should be reversed, and judgment entered here on the agreed facts for the appellant.

*Murray F. Smith,* for appellee.

Upon the question of notice and the sufficiency of notice to the owner of the land at the time the petition was filed, I have this to say : The amendment to the charter uses this language : ".By requiring five days' notice of condemnation to be given to the landholder."   The form of the notice and the manner in which it was to be served in case of non-residents or residents, is not provided for.

I contend, therefore, that any notice which puts the landholder in possession of the information and enables him to participate in the selection or formation of the tribunal to assess his damages and to see that the persons selected or appointed to act are fair and impartial, and also to resist the application, if he be so advised, is sufficient.   Lewis on Em. Dom. 366 and 367.   As to the manner of giving notice, I contend that the mode adopted here was sufficient.

If the court had acquired jurisdiction of the property at the time that Luke Madden conveyed to his wife, Julia Madden, then she took it subject to be bound by any subsequent step in the proceedings : because it then became a proceeding *in rem,* and any person should have then came forward and made known his claim. *Stewart* v. *Board of Police,* 25 Miss. 479 ; *R. R. Co.* v. *Hemphill,* 35 Miss. 17.

The appearance by Luke Madden before the commissioners was a waiver of any defects in the proceedings, if any existed, and the taking of an appeal by Julia Madden was also a waiver as to her. Lewis on Em. Dom., §§ 341, 379.

If the court should be of the opinion that these points are not well taken, then we submit that by the just and equitable law of estoppel the appellant is barred from ever questioning these proceedings.

The court will note that appellee never entered upon this land or took possession of same until the appellant had made claim under oath in the attachment proceeding against her husband, alleging that the amount awarded was her money, and not her husband's, and after she had thus solemnly sworn that the money belonged to her and thus ratified the condemnation, appellee entered upon the land and proceeded to construct tracks on and over it. Lewis on Em. Dom., § 606 ; *Embury* v. *Conner*, 53 Am. Dec. 325.

In *Baker* v. *Braman*, 40 Am. Dec. 387, it was held that by bringing an action for damages, awarded the landowner, under an unconstitutional law, the plaintiff adopted the statute and removed all obstacles to its operation. That the claim of Mrs. Madden is a suit for money, see *Atkinson* v. *Foxworth*, 53 Miss. 741 ; Andrews' Dig. 140.

On the subject of estoppel, see *Parmele* v. *McGinty*, 52 Miss. 484; *Handy* v. *Noonan*, 51 Miss. 166 ; *Gaines* v. *Kennedy*, 53 Miss. 103 ; Bigelow on Estop. 652, heading, " Inconsistent positions generally," and chap. 21, page 671.

COOPER, J., delivered the opinion of the court.

Under appellee's amended charter the proceedings for condemnation of land, where the same is taken in vacation of the chancery court, is by application to a mere ministerial officer (the clerk of the chancery court) and may be consummated without any order or judicial action by the court. This being the case, it is material to the validity of the appropriation that a strict compliance with the terms of the charter be apparent in the record. It nowhere appears, either in the appointment of the commissioners, in their return, or in an order entered thereon, that they were " disinterested." And if they were not, there has not been a lawful condemnation of the land. *Allen* v. *Levee Commissioners*, 60 Miss. 93 ; *White* v. *B. & A. R. Co.*, 64 Miss. 566.

The facts disclosed by the record do not show an election by appellant to accept the sum awarded, nor estop her from recovering the land. She appealed from the award of the jury, but being informed by her counsel that the appeal was too late,

and the fund paid in by the company having been proceeded against by the creditors of her husband, she interposed a claim in that suit to it as against them. This was merely precautionary, so that in event the proceedings in condemnation should be held valid, she might not lose both the land and the money. If the money had been adjudged to be hers in the controversy with the creditors, and she had then declined to withdraw it from the custody of depositary until her right to recover the land should be determined, it would be difficult to say that the defendants had right of complaint. She has not yet reached the point in that controversy at which she is put to her election as between the land and the money, and her objection to an appropriation of the money to the debts of her husband is not an election to accept it for her land.

On the agreed facts, the judgment should have been for the plaintiff, and *such judgment will be entered here for the possession of the premises and for the agreed damages and rents.*

*Murray F. Smith*, counsel for appellee, filed a lengthy suggestion of error, reviewing the facts of the case, and earnestly insisting that the views announced in the opinion were in opposition to the decisions of other courts, and not fortified by citations or statement of reasons, and that the opinion should be reconsidered.

The positions taken are as follows :

1st. After the dismissal of Mrs. Madden's appeal, she had two remedies offered to her : one was to take the money and ratify the condemnation ; the other was to repudiate the condemnation and claim the land.

2d. These two remedies were inconsistent, and the election of one was the repudiation of the other, and barred her right:

3d. The bringing of a suit is an election of a remedy.

4th. The propounding of a claim in an attachment proceeding is the bringing of a suit.

5th. From propounding her claim to the money, the appellee might reasonably infer that she intended to claim the money, and appellee having acted on this presumption, before her claim was withdrawn, she is estopped.

It is the settled doctrine of courts of high authority in this country that a party cannot, in the course of litigation, occupy inconsistent positions. Upon this rule the doctrine of election is founded. A man shall not be allowed to approbate and reprobate. Where the courses are inconsistent, he will be confined to the course of action he first adopts. *Thompson* v. *Howard*, 31 Mich. 312; 3 Johnson's Chan. 420; *Sloan* v. *Halcomb*, 29 Mich. 160; *Rodermund* v. *Clark*, 46 N. Y. 354.

The statement in the opinion, that the filing of the claimant's issue was merely "precautionary" is begging the question, an assumption by the court, unsupported by anything in the record, which is silent as to her motive, and no presumption as to motive could be half so strong as her voluntary oath, solemnly made, asserting that the money was hers, the proceeds of the sale of her land. This was a sale by judicial proceeding—a fixing of the price for the land and transfer of the title. The presumption from her conduct and oath is that she wanted the money, accepted it or would accept it, as soon as enabled to do so.

Again, the opinion asserts that if the money had been adjudged in the attachment suit to Mrs. Madden, and "she had declined to withdraw it until her right to recover the land should be determined, it would be difficult to say that the defendants had right of complaint. She has not reached the point in that controversy at which she is put upon her election as between the land and the money." This is at variance with the authorities, and contrary to every principle of equitable estoppel. How can it be said that a party can sue for and get a judgment for the price of a thing and then hold up the judgment until he tests whether he has been divested of the title to the thing? Such case is not half as strong as the one under consideration.

The rights of the appellee cannot be made to attend upon the whims and caprices of a litigant. It cannot be compelled to withhold this money at the call and demand of a litigant, and then be told after it has been awarded to such litigant, "wait a little longer; attend another suit; defend that and let me see if I can not recover the very thing which you have paid this money into court to obtain."

That the institution of the suit is the election of the remedy, see *Connihan* v. *Thompson*, 111 Mass. 270; *Hildreth* v. *Butler*, 5 Metc. 49.  But the appellant is also estopped because she has so acted that any reasonable person would presume that she intended to be satisfied with the money paid into court, and had abandoned her claim to the land.  *Pickard* v. *Sears*, 33 Eng. Com. Law, 6 Ad. & Ellis 115; *Freeman* v. *Cooke*, 2 W. H. & G. 654; *Drew* v. *Kimball*, 43 N. H. 282; *Mitchell* v. *Reed*, 9 Cal. 204; Greenleaf Ev., §§ 207, 210.

Unless the maxim, as old as the law itself, " ignorance of the law excuses no man," has been abrogated in this state, appellant must have known, and is presumed to know, if she did not know, in fact, that this proceeding was void.  With this knowledge she makes her assertion and claim to the money under oath.  How then can appellee be charged with notice that this was merely " precautionary."  After her appeal, which meant only that she was dissatisfied with the price, she makes this claim, and from that time until the institution of this suit she was silent in word, passive in action, and dormant in thought, so far as appellee is concerned, and so far as evincing any claim to the land.  As we have seen, her propounding the claim was an institution of a suit.  *Atkinson* v. *Foxworth*, 53 Miss. 741.

The opinion of the court fails to cite a single authority.  I am, therefore, at a loss to know whether or not it is the reasoning of the court alone, or whether it is fortified by authority.  If so fortified, I submit that these fortifications cannot stand the assaults of such weighty metal as Kent, Chief Justice Shaw, and the court over which Judge Cooley presides, and the supreme court of New York, presided over by that learned judge, Mr. Folger.

On suggestion of error by counsel for the appellee, the court made response as follows :

CAMPBELL, J., delivered the opinion.

There can be no denial of the doctrine of " election," as an established rule of law, but, like its theological namesake, it is held and applied with many variations by the hundreds of cases, in

which it has been invoked. It is not difficult to produce decisions, which seem, on slight examination, to support the contention of counsel that our opinion in this case is at variance with the accepted doctrine of election, but we have examined not only the citations of counsel, but many more, and confidently affirm that no case can be found, which, on attentive examination of all its features, will condemn our decision. The existence of such a case or cases would not alter our views or change our decision, for it is a mistake to assume, that every decision, of even a respectable court, or opinion of an eminent lawyer, will serve as *authority* for our guidance. Cases may be found to support almost any proposition, and opinions of the most eminent command only that respect which the reasons supporting them induce. Nor do we feel called on, always, to cite the books we examine in considering a case, or to fortify our utterances by furnishing proof that some other court held as we do.

The presumption must be indulged, in accordance with the fact, that every question before the court is carefully examined, and considered, by the help of counsel, in their arguments and citations, and that the court, with all the light obtainable by the efforts of counsel, and its own, solemnly adjudicates the question involved, upon grounds satisfactory to it, whether cases are cited or reasons stated in its opinion or not.

"Circumstances alter cases," and the circumstances of this case distinguish it, materially, from each case, so confidently relied on by counsel to show our error, and from every other case among the hundreds to be found illustrating the various phases of the doctrine of election.

This case does not present the instance of *a distinct and unequivocal act evincive of a choice by Mrs. Madden to accept the money in lieu of the land.* Having joined her husband, against whom the condemnation proceedings were instituted, in an appeal, and advised that her appeal would be dismissed, as too late, she interposed her claim to the money awarded to her husband, by making affidavit in the attachment suit against him. There were then pending two proceedings by her—the appeal, and the claim in

the attachment suit—and *the railway company obtained a dismissal of her appeal,* and thereby left her with the claim she had interposed, which remained *in statu quo,* and *no action has been taken by her since.*

During this time she was in possession of the land, manifesting, unmistakably, her determination to hold it against the claim of the railroad company. Where is the evidence of a choice by Mrs. Madden between the money and the land?

If it were true that her making claim to the money was a decisive election, where is the evidence that she made this claim, knowing the void character of the condemnation proceeding, and knowing her rights in the matter, without which it would not conclude her? But counsel says, the law imputes to her knowledge of the voidness of the proceedings, and affects her with knowledge of her rights in the matter, and, therefore, she must be held to have made her election, with all its consequences. Not so thought Cooley, J., in *Potter* v. *Brown,* 50 Mich. 436, whose language, applied *mutatis mutandis* to this case, is, "It is enough for present purposes to say that we do not think (the company) should be suffered to take advantage of such inconsistent or foolish action of complainant (appellant) as its original fault in wrongful condemnation proceedings has led her to take." It will be seen that he does not cite "authorities," but speaking for a court, decides on its own authority, as a court should.

Nor did the supreme court of Massachusetts think the mere act of inconsistency afforded a conclusive presumption against the actor, when it said, speaking of "election," "But the doctrine * * * depends not on technical rules, but upon principles of equity and justice, and upon actual intention. An election made in ignorance of material facts is, of course, not binding, when no other persons' rights have been affected thereby. So, if a person, though knowing the facts, has acted in misapprehension of his legal rights, and in ignorance of his obligation to make an election, no intention to elect, and, consequently, no election is to be presumed. This has been settled in England by a long series of authorities, of which it is sufficient to cite a few." *Watson* v. *Watson,* 128 Mass. 152.

Nor did the supreme court of California consider that, merely instituting a suit against an administrator to recover for embezzlement by his intestate, was an election, so as to bar a suit for what the money alleged to be embezzled was invested in. *Wells, Fargo & Co.* v. *Robinson,* 13 Cal. 134.

Nor did the supreme court of Pennsylvania, when in *Anderson's Appeal,* 36 Pa. St. 476, it said, " An election by matter *in pais,* can only be determined by plain and unequivocal acts, under a full knowledge of all the circumstances, and of the parties' rights. One is not bound to elect until he is fully informed of the relative value of the things he is to choose between, and if he make an election before the circumstances necessary to a judicious and discriminating choice are ascertained, he will not be bound. These positions are clearly sustained by all the authorities, etc."

And Kent, *clarum et venerabile nomen,* was of the opinion that to bind one by an election it must have been *an intentional choice of one thing, instead of another,* and that it must appear to have been with knowledge, and that where knowledge is not proved, it will not be presumed, in order to conclude a party by a supposed election. *Dash* v. *Van Kleeck,* 7 Johns. 477 ; *Jackson* v. *Brownson,* Ib. 227.

We could multiply citations, but it is needless. The truth is, principle is far more satisfactory than authorities, so called. " Estoppel *in pais* only arises when manifest injustice and equity, as respects the interest of another, require its application ;" and we look in vain for the justice or equity of the claim of the railroad company to hold Mrs. Madden to have elected the money, instead of the land, and we cannot discover that she had knowledge of all the facts and circumstances, which rendered the condemnation void, or of her rights, or of the consequences of her act. We know that she continued to occupy the land, and is not shown to have had any intention to surrender it for the money she claimed.

We grant, if she had received the money, and held it, she could not have claimed the land too. We accept the doctrine of election as sound (orthodox), and will not hesitate to apply it, as understood by the sages of the law, and by us, wherever justice and

equity, as respects the rights of others, will be subserved thereby. We do not suppose the doctrine stands on different grounds, as applied to condemnation proceedings in behalf of a railroad company, and other parties, but while this is true, each case must be governed by its own circumstances, and we are satisfied that the circumstances of this case do not call for, or admit of the application of the doctrine as invoked in behalf of the appellee.

There are many cases illustrating and enforcing the rule that, " Where a party whose land is taken by a railroad company under the right of eminent domain, and in whose favor damages are assessed, and deposited to his credit, who knows of irregularities in the proceeding, and receives the money, without objection, and sees the company construct its road over his land, cannot thereafter maintain any proceedings, on account of such irregularities, as by accepting the damages, he waives all right to object to the proceedings. He cannot have the money, and litigate with the company as to their right to occupy the land." Herman on Estoppel, § 1041 ; and this we accept as sound doctrine, but, in every case on this subject, which we have been able to find, the money was actually received by the party, with full knowledge of all the facts, and then the party having the money thus received sought to avoid the condemnation proceedings. We have not found, counsel has not, and we do not believe there exists in England or America, a case presenting the features of this, in which the party situated as Mrs. Madden is, has been estopped to claim her land, because of her claim to the money, under the circumstances in which it was made.

. She is not shown to have had any knowledge of the nullity of the proceedings, and this knowledge is not to be presumed, but must be shown, as the cases cited show. She continued to hold the land, against the claim of the railroad company, having actual possession, until it was forcibly taken from her tenant. The only thing she did, seemingly inconsistent with a claim to the land, was, to interpose her claim to the money attached by creditors of her husband, and this act, equivocal under the circumstances, was effectually neutralized by her continued possession of the land, in re-

sistance of the claim of appellee. It is true in law as in mathematics that equal forces operating in contrary directions set each other at rest, and the act of Mrs. Madden, in holding her land visibly against the railroad company, was quite the equal, as an indication of her intention, as the contrary act of claiming the money, and no election can be implied. Even where one is so situated with respect to two properties as to be required to elect, and deals equally with both, by receiving rents and profits, no election can be implied, because of absence of any intention to elect the one and reject the other. *Padbury* v. *Clark*, 2 MacN. & G. 298 ; Pomeroy's Eq. Jur., § 515, note.

Election is a matter of intention. It need not be expressed in so many words, it is true, but it will not be implied, except from some unequivocal act evincive of it. Story's Eq., § 1097.

It cannot be said that the appellee was misled by any act of the appellant, or that it took any action in consequence of the act of the appellant now invoked as an estoppel. It is a pure assumption that the company entered on the land because the appellant had claimed the money rather than in pursuance of the condemnation it had secured, and supposed to be regular and valid, as shown by its contention here on this appeal. Indeed, upon the doctrine of estoppel, the appellee was bound to regard its proceeding to condemn as valid, and the presumption must be indulged that it took forcible possession of the land, in pursuance of its supposed right because of the condemnation. Any other view of its action would be unjust to the appellee, and we would shield it from such an imputation.

*Our former decision will stand.*