STATE v. JONES.

(Filed November 15, 1905).

*Towns—Eminent Domain — Condemnation Proceedings — Notice to Landowner—Payment of Damages—Method of Appraisal—Constitutional Law.*

1. The Charter of Creedmoor (Chap. 398, Private Laws 1905,) with reference to condemnation of streets, which provides for notice when the landowner's property is to be appraised and his compensation fixed, is valid though it makes no provision for notifying him of contemplated action ·by the commissioners.

2. While a landowner is not entitled to notice, when the Legislature, or the commissioners to whom it has delegated its power, appropriates his property to a public use, he is, however, entitled to notice and a hearing when his compensation is fixed.

3. An assessment for damages in a condemnation proceeding need not be by a jury of twelve freeholders—it is not a controversy within the meaning of the Bill of Rights.

4. The provision of the Charter of Creedmoor that one of the appraisers shall be appointed by the commissioners and giving the land-owner the right to appoint one and those two shall select a third, with a right of appeal to the Superior Court, is valid, though it omits to provide for the appointment of an appraiser if the landowner refuses and though all the appraisers are freeholders of the town.

5. As soon as the commissioners in the exercise of the powers delegated to them appropriated the land to a public street, they had the right to enter and open it without awaiting the payment of damages.

6. The requirement that the report of appraisers shall lie in the mayor's office for 10 days for purposes of investigation and appeal and ·that unless an appeal is taken from such report "the land so appraised shall stand condemned for the use of the town and the price fixed shall be paid," etc., applies only to the procedure for fixing the price to be paid and means that if no appeal is taken from the appraised value, the land shall stand condemned *at such value* and the appeal does not postpone the right of entry.

CONNOR, J., dissenting.

INDICTMENT for forcible trespass against Jesse Jones and others, heard by *Judge W. B. Councill* and a jury, at the July Term, 1905, of the Superior Court of GRANVILLE County. Upon a special verdict, setting out the facts, His Honor adjudged the defendants not guilty and the State appealed.

*Winston & Bryant* and *Graham & Devin,* with the *Attorney-General,* for the State.
*B. S. Royster* and *T. T. Hicks* for the defendants.

BROWN, J.   The defendants, acting under the authority of the Board of Commissioners of the Town of Creedmoor, entered upon certain land of S. H. Rogers, the prosecuting witness, within the said town and proceeded to open and lay out a public street.   Rogers was present and objected.   We assume that the acts of the defendant, Lyon, who was mayor, and his associates, constituted a forcible trespass unless they were duly authorized to enter upon and take possession of said land and open it as a public street.   At a meeting of the board on May 16, 1905, the commissioners adopted a resolution condemning the land, upon which the trespass is charged to have been committed, for use as a public street and directing that it be opened.   The resolution provided for the appointment of an appraiser on behalf of the town and for notice to Rogers to select his appraiser, and fix a time and place for Rogers and his appraiser to meet the town appraiser on the premises to fix the compensation.

The Town of Creedmoor was chartered by the General Assembly of 1905, Private Acts, chapter 398.   Section 15 of the act gives to the commissioners plenary power to condemn land for streets, sidewalks and for other town purposes, and makes it their duty to keep the streets in repair. Section 17 prescribes the machinery for condemning land for streets or for other town purposes, and provides that the value shall be appraised by three freeholders of said town

qualified to act as jurors and not connected by blood or mar-
riage with the landowner or officially with the town. The
section also provides for an appeal. In case no appeal is
taken within ten days the condemnation proceedings are final
and the money awarded shall be paid from the town funds.

So far as we can see, the authorities of the town acted in
strict conformity to the act in passing the resolution con-
demning the property. They appointed an appraiser and
notified Rogers to select one. The fact that he refused and
that he appealed to the Superior Court could not have the
effect to delay the opening of the street until the appeal was
finally determined. The appeal was not from the resolution
condemning and appropriating the land to a public use.
That was a legislative *ex parte* act of which Rogers was not
entitled to notice and to which he could not be a party.
The appeal was necessarily from the report of the appraisers
fixing the compensation. As we shall hereafter see, the
delay occasioned thereby in the payment of the money could
not stay the sovereign power in taking possession of the
land.

We agree with the Attorney-General that if the provisions
of the charter of Creedmoor are insufficient so that the
power of eminent domain cannot be lawfully exercised by
the town authorities, the defendants would be guilty. It is
objected that the charter makes no provision for notice
to the land owner, and, therefore, defendants cannot justify
under it. Mr. Mills, in his work on Eminent Domain,
states that notice is not absolutely necessary. Seizure is
constructive notice and the character of the proceeding gives
notice to the world. Section 94. But we hold that, while
the landowner was not entitled to notice, when the Legisla-
ture, or the commissioners to whom it has delegated its
powers, appropriated his property to a public use, he was,
however, entitled to notice and a hearing when his compen-
sation was fixed. Mr. Elliott, in his work on Roads and

Streets, sec. 200, examines this question carefully and says: "It is, however, held in most of the cases which have given the subject careful consideration that a statute will be valid which determines without any interference a question of the necessity for the appropriation, or submits it without providing for notice to an inferior tribunal, but that a statute which undertakes to determine the question of compensation or to submit it to commissioners or appraisers, without providing for notice, is unconstitutional." The same author says, in sec. 198: "There are some courts of high authority which hold that although notice is indispensable, it is not essential to the validity of the statute that it should provide for notice, and that it is sufficient if due notice is actually given." The authorities he cites are from some of the ablest courts in this country and fully support the author's views.

Of what steps and proceedings is the landowner entitled to notice. Mr. Lewis, in his work on Eminent Domain, vol. 2, sec. 66, answers the question as follows: "All questions relating to the exercise of the eminent domain power and which are political in their nature and rest in the exclusive control and discretion of the Legislature may be determined without notice to the owner of the property to be affected. Whether the particular work or improvement shall be made or the particular property taken are questions of this character and the owner is not entitled to a hearing thereon as a matter of right.

Other authorities hold the same view. The Supreme Court of Ohio says: "It is not upon the question of the appropriation of lands for public use, but upon that of compensation for lands so appropriated, that the owner is entitled of right to a hearing in court and the verdict of a jury." *Zimmerman v. Canfield,* 42 Ohio St., 463. To the same effect, see *People v. R. R. Co.,* 160 N. Y., 225.

While the charter of Creedmoor makes no provision for notifying the landowners of contemplated action by the com-

missioners, it provides for ample notice when the landowner's property is to be appraised and his compensation fixed. In fact, it gives him the right to appoint one of the appraisers and provides that one shall be appointed by the commissioners and those two shall select a third. The charter further provides that the report of the appraisers shall be signed by at least two of them and shall be filed with the mayor and "lie in his office ten days and be subject to inspection." It also provides for an appeal to the Superior Court by the landowner if he is dissatisfied. Giving the landowner the right to select one of the appraisers and the right of appeal are tantamount to an express provision requiring notice to him of the appraisement. The board required such notice to be given to Rogers and it is admitted that he refused to act under it and to appoint an appraiser. If he had not received the notice he could not have refused to act. Instead of selecting "his man," as the statute provided, at·the appointed hour he appeared on the ground and seated himself upon the fence and thereby endeavored to obstruct the opening of the street.

Mr. Randolph, in his work on Eminent Domain, sec. 338, says: "A condemnation proceeding which does not provide for notice seems to be considered in some decisions as essentially defective. But the better view is that such act may be made effective by actually giving the proper notice. Thus it has been held that notice is plainly intended where the act contemplates the participation of the owner in the proceedings, as where it authorizes him to assist in striking a jury or gives him the right to appeal."

See also *State v. Jersey City*, 24 N. J. L., 662; *State v. Trenton*, 36 N. J. L., 499; *Kramer v. Cleveland*, 5 Ohio St., 140; *Swan v. Williams*, 2 Mich., 427; *Belt Ry. v. Bretzell*, 75 Md., 94; *Peoria, etc., R. Co. v. Warner*, 61 Ill., 52.

Mr. Lewis recognizes it as settled law by repeated adjudications that statutes authorizing condemnation and making

no provision for notice are valid if actual notice is given. Lewis on Eminent Domain, sec. 368. But it is unnecessary that we should go that far in this case. But at the same time he says: "By far the greater portion of the cases proceed upon the principle of implying a requirement to give notice from the provisions of the statute itself." The implication requiring notice in the charter of Creedmoor is plain, and in pursuance thereof the notice was given. That is the ground upon which we place our decision.

2. Has the statute provided a proper tribunal to fix the compensation?

We agree with the learned Chancellor of New York that "the government is bound in such cases to provide some tribunal for the assessment of the compensation or the indemnity before which each party may meet and discuss their claims on equal terms." 2 Kent Co., 399.

There is no constitutional provision in our State which guarantees a jury trial in such proceedings. The Constitution of the State does not refer to the right of eminent domain. The right to condemn and the duty to pay compensation are recognized by the courts as a right and duty appertaining to sovereignty, which the State may exercise freely upon all proper occasions and which a jury has no right to control, except where an appeal is taken and tried in the *nisi prius* courts. *Scudder v. Trenton Falls Co.,* 1 N. J., Eq., 694.

It was held by this court as early as 1837, in an elaborate opinion by *Chief Justice Ruffin,* that an assessment for damages in such a proceeding need not be made by a jury of twelve freeholders. It is not a controversy within the meaning of the Bill of Rights, nor is it such a trial by jury as that instrument declares shall be "sacred and inviolable." *Railroad v. Davis,* 19 N. C., 452. If, however, a jury trial were guaranteed the landowner by the fundamental law, his rights in that respect are fully protected by his right of appeal to a court where all issues of fact are triable by jury.

*State v. Lytle,* 138 N. C., 738.   The method for the assess-
ment of damages in the Creedmoor charter has been passed
upon and fully approved by this court in *State v. Lyle,* 100
N. C., 499.   In that case the charter of Reidsville was under
consideration and the section relating to the appraisement is
copied in the opinion of *Chief Justice Smith.*   The two are
nearly identical, with the exception that in the Reidsville
charter the mayor can appoint an appraiser if the landowner
refuses.   We do not think such omission in the Creedmoor
charter invalidates it, for if the landowner refuses to select
an appraiser it is his own folly.   It is not necessary for us to
decide as to the power of the 'mayor to fill the vacancy on
the board of appraisers occasioned by the obduracy of the
landowner.   As he has taken an appeal his damages will be
assessed *de novo* by a tribunal whose jurisdiction is un-
doubted.   Certainly the stubbornness of the landowner can-
not be permitted to put a stop to the exercise of an un-
doubted and necessary power given to all towns by the Gen-
eral Assembly.   The fact that the appraisers are freeholders
of Creedmoor makes no difference.   The question has been
decided in other States, as well as our own, and it has been
held that where there is a right of appeal, or where there is
authority in a court of competent jurisdiction to review the
proceedings, the common council of the town seeking to ap-
propriate the land may appoint all of the appraisers.   Elliott
on Roads and Streets, sec. 281, and cases cited.   In the Reids-
ville charter, passed upon by this court in *Lyle's case,* the
statute provided that all the appraisers should be freeholders
and citizens of the town.   *Lyle's case* is practically on all-
fours with this, and as it has remained unchallenged since
1888, we see no reason to overrule it now.   It is cited and
approved in several cases, the latest being *Railroad v. New-
ton,* 133 N. C., 134.

3. As soon as the commissioners in the exercise of the
powers delegated to them appropriated the land to a public

street, they had the right to enter and open it without await-
ing the payment of damages. *State v. Lyle, supra;* Cooley
Const. Lim., sec. 480. This question is fully discussed in
*Lyle's case* and sound reasons given why the public needs
should not await the assessment and payment of damages.
We think that decision is supported by the great weight of
authority. *Railroad v. Davis, supra; Railroad v. Parker,*
105 N. C., 246; *Railroad v. Newton, supra.*

The present *Chief Justice* says in *Newton's case:* "Form-
erly the landowner had no right to a jury trial in fixing com-
pensation upon condemnation of the right of way, nor was the
compensation required to be paid before entry. The Code, sec.
1946, changed this as to railroads by requiring the company
to pay into court the sum assessed before entry." This
opinion was approved by a unanimous court and delivered
in 1903. A distinction is made as to the time of payment in
cases where the seizure is made by the sovereign (as in this
case), and where the land is condemned by a *quasi* public
corporation exercising the power of eminent domain. In
the former case, and in the absence of constitutional restric-
tions, it is held in most of the States that the making of com-
pensation need not precede an entry upon the property where
(as in this case) provision is made by the sovereign power
for the payment of the money. Lewis on Eminent Domain,
sec. 456, and notes thereto, citing all the cases to that effect;
Randolph on Eminent Domain, sec. 291; Am. & Eng. Enc.
(2nd Ed.), vol. 10, p. 1139, and cases cited; Elliott, sec. 241.
In Mills on Eminent Domain, sec. 125, North Carolina is
put down as one of the States wherein it is held that com-
pensation need not precede the entry, but that there may be
an entry and adjustment afterward. *Johnston v. Rankin,*
70 N. C., 550; *Railroad v. McCaskill,* 94 N. C., 746.

The statute requires the report of appraisers to lie in the
mayor's office for ten days for purposes of inspection and
appeal and provides that unless an appeal is taken from such

report "the land so appraised shall stand condemned for the use of the town and the price fixed shall be paid," etc. We think that this applies only to the procedure for fixing the price to be paid and means that if no appeal is taken from the appraised value the land shall stand condemned *at such value*. The appeal is not allowed to postpone the right of entry. Such a construction as that would seriously interfere with and indefinitely delay public works, such as opening or extending streets and the like. "Public policy forbids the suspension of operations on works of internal improvement during the pendency of litigation to ascertain the damage to which parties may be entitled." *Phifer v. Railroad*, 72 N. C., p. 434.

For the reasons given we are of opinion that the entry of defendants was rightful and that upon the special verdict they are not guilty. The judgment of the Superior Court is

Affirmed.


WALKER, J., concurring: The defendants are indicted for a criminal trespass and questions which might be open for discussion and decision, if there had been a direct attack made upon the proceedings for a condemnation of the land, by appeal or otherwise, are not to be considered in this collateral proceeding. It may be regarded as settled law that the power to take private property for public uses belongs to every independent government exercising sovereign power, for it is a necessary incident to its sovereignty and requires therefore no constitutional recognition. *U. S. v. Jones*, 109 U. S., 513. No provision for condemnation has ever been inserted in our Constitution, but the right of eminent domain or the right to condemn private property for public uses has always been conceded as essential to the due exercise of the powers of government and to the promotion of the public welfare. Legislation in the exercise of this inherent power, though subject to judicial control, is said

to be practically unlimited, if the purpose be a public one and sufficient provision is made for compensation to the owner of the property proposed to be taken. *Railroad v Davis,* 19 N. C., 451; *Lecombe v. Railroad,* 23 Wallace, 108. The mode of exercising the power of eminent domain, unless otherwise provided in the organic law, rests in the sound discretion of the Legislature, subject, however, to the principle just stated, that there must be sure and adequate provision for compensating the owner. *McIntyre v. Railroad,* 67 N. C., 278; *Lecombe v. Railroad, supra; Searl v. School Dist.,* 133 U. S., 553; *Cherokee Nation v. Railroad,* 135 U. S., 641. If the facts of this case are examined in the light of the foregoing principles, it cannot be doubted that the Legislature has assumed to exercise its unquestionable right to have land condemned in the town of Creedmoor for public streets. The Legislature has conferred upon the town commissioners general authority to act in the premises where lands are required for the purpose of opening and laying out streets or for other public purposes and has also provided a perfectly fair and sufficient method for ascertaining and paying just compensation to the land owners, whose property may be taken for the purpose. Priv. Laws 1905, chap. 398. In this case the prosecutor did not see fit to avail himself of the privilege given him to appoint one of the appraisers, but wilfully and obstinately refused to do so. He thus set the law at defiance. Not only did he attempt to shorten and weaken, but actually to paralyze the arm of the law when stretched forth in an effort to promote the public welfare, and for no good reason whatever. There is and cannot be any suggestion in this case, that he was about to be wrongly or oppressively treated or that his property was about to be taken without due process of law. When such has been the case, stout resistance to the last in protection of his own property and in vindication of his constitutional right, is justifiable. Such conduct is not stub-

STATE *v.* JONES.

bornness, but lawful resistance. Wilful and unreasonable obstruction to the due and orderly course of government and to the administration of law as declared by the proper authority is not only unwarranted, but entitles the offender to little or no consideration at the hands of the court, where there has been no clear violation of his rights. If he has lost any advantage secured to him by the statute, through his refusal to accept it, why should we hear him now complain of the alleged imperfect execution of the law growing out of his own misconduct, unless we propose to reverse or abolish the salutary maxim, that no man shall be permitted to take any benefit of his own wrong, by which principle, if it is to stand unimpaired, he should be judged. The statute gave him a perfectly fair and adequate remedy for the full protection of his property, and for the recovery of just compensation if the public good required that it should be taken. Will the courts allow him to thus trifle with the law, and to make his trifling the foundation of his complaint that it was not well executed?

But apart from these considerations, he has not lost any right by the supposed irregularity in the proceedings. The object in appointing the appraisers, is to ascertain the measure of compensation and nothing else. If he is dissatisfied with the decision of the appraisers, he is given the right of appeal and of this right he has availed himself. The way is now open to him for the ascertainment of his damages by a jury, the most impartial body known to the law, before whom his rights can be determined both as to the facts and the law. That he cannot complain under such circumstances, has been definitely and conclusively settled by this court, if we are not to disregard, but to follow its solemn adjudications and one in particular, which seems to me to dispose of all the disputed questions in this case and, a decision too which received full consideration from a court of exceptional learning and ability. In *Johnston v. Rankin,* 70 N. C., 550,

it appears that the sheriff had not only notified the land-
owner of the day on which the appraisement of his land
proposed to be condemned for a street would be made, but,
worse than this, he notified him that the jury would appraise
it on one day, when in fact they appraised it on a different
day, thus not only failing to give him notice, but misleading
him. The court said he was not bound by the proceeding and
"he might *perhaps* have regarded all after proceedings
as trespasses, being under a warrant which was void as to
him for want of notice," or he might have had the proceed-
ing quashed. "But," says the court, "he appeals and thus
vacates the assessment during the pendency of the appeal.
By voluntarily becoming a party, he waives the irregularity
of want of notice, and gives the appellate court jurisdiction
to hear the case on the merits." He clearly waived, by
appealing, any objection to the defect in the proceedings,
which would otherwise have invalidated them, says the court
in another part of its opinion. This case also definitely de-
cides that the commissioners are the sole judges of the public
use and of the necessity for taking the land and that the
appeal involves nothing but the amount of compensation.
"There is therefore nothing to forbid the defendants from
proceeding with the improvement pending the appeal. The
law of this State does not require compensation to be *first*
made, as that of some States does." I have examined the
charter then under review and find that it nowhere ex-
pressly authorizes entry upon the land before compensation
is made, but it provides that, on payment of the amount of
the appraisement, the streets may be opened. In *McIntyre
v. Railroad,* 67 N. C., 278, the court says: "If the owner
of land overflowed by a mill dam could bring his action on
the case for damages every day, no public mill could be
established. In like manner if the owner of land taken by
a railroad for its track, could bring his action of trespass
every day, no railroad could be built  *   *   *   If the

officers of the company cannot enter on lands and make surveys without a trespass, they could never locate the road. And if the road were located, and its construction delayed until the damages to all the land owners on the route were ascertained under the act, the delay would be indefinite, and of no benefit to anyone. To hold, that during the pendency of a proceeding by the company to have the lands condemned, it could not prosecute its works without being exposed daily to an action of trespass, would effectually defeat the policy of the act." To the same effect are *Railroad v. McCaskill,* 94 N. C., 746; *Railroad v. Davis,* 19 N. C., 451. In *Phifer v. Railroad,* 72 N. C., 433, it is held that the appeal carried the whole case into the Superior Court, "where the plaintiffs (the landowners) can have every right which they seek in the action adjudged and determined." And in *State v. McIver,* 88 N. C., 686, it was said to be the rule in this State in reference to the taking of private property for public uses, that the compensation to the owner need not precede the act of appropriation, if adequate provision is made for an assessment of his damages. Numerous other cases of like import might be cited, but those already mentioned will suffice to show the result of actual decision by this court upon the subject, and they are conclusive against the contention of the prosecution.

The words of this act, that if an appeal is not taken within 10 days "the land so appraised shall stand condemned for the use of the town and the price fixed by the appraisers shall be paid from the funds of the town," evidently mean that the appraisement shall stand as fixed by the appraisers and not that the town shall have no right to take the land until the time for appealing has expired, for condemnation always precedes appraisement. Much stronger language was used in the charter of Asheville, construed in *Johnston v. Rankin, supra,* and yet the court held in that case that the town could enter and proceed with the work of

139—40

laying out the street. But giving to the words we have quoted their broadest meaning, that the title did not pass until the time for appealing had expired, the town was not thereby forbidden to go upon the land for the purpose of laying out and constructing the street. We·should always go to the farthest permissible length in protecting the rights and property of the citizen from unlawful interference, but some regard must also be had for the rights of the public, and we should be careful to see that the public welfare is not prejudiced by an undue consideration for private interests.

Connor, J., dissenting: I should be content to note my dissent from the conclusion reached in this case, but for the fact that I am deeply impressed with the conviction that the opinion, of course unconsciously, weakens the security of private property, and invites laxity, both of sentiment and conduct on the part of those to whom the Legislature is constantly committing the exercise of the highest act of sovereignty. "Laws which authorize the taking of private property for public use should be strictly construed and closely scrutinized. Nothing justifies such an invasion of private right but an imperative public necessity, and the exercise of this right of Eminent Domain, under color of which so many iniquities have been committed, should be held strictly within the bounds provided by the Constitution and the laws." *Refining Co. v. Elevator Co.*, 82 Mo., 121. "The appropriation of private property under the right of Eminent Domain is an exercise of sovereign power, and when reliance is placed upon statutes conferring the right, those statutes being in derogation of common right must be strictly construed, and the right cannot be exercised except in strict conformity to the power conferred." *Hurvey v. Railroad*, 174, Ill., 295.

"The privilege sought to be obtained by the application is against common right and the law should be construed

strictly against the privilege; and no question is better set-
tled in this State than that where a special and limited juris-
diction is conferred by statute upon an individual or a court,
the record must affirmatively show a compliance with all the
requisitions of the statute." *Martin v. Rushton,* 42 Ala.,
289.

"The law is jealous of the right of property holders, and
adopts these formalities of procedure for their protection
\* \* \* The right of Eminent Domain, that of taking
the property of the private citizen without his consent and
devoting it to the use of the general public, is an exercise
of the highest act of sovereignty. It can only be called into
existence by the authority of the Legislature and by the tri-
bunal provided by law. This statute prescribes the mode
and I have no doubt whatever that it is mandatory. The
failure of the city council to comply with it is fatal." *City
of Madison v. Daley,* 58 Fed. Rep., 753.

"In cases like the present, it is always to be borne in
mind that these acts of parliament are acts of sovereign and
imperial power operating in the most harsh shape in which
that power can be applied in civil matters. \* \* \* Who-
ever considers the effect of this must see the consequences
which frequently do happen to individuals. Property to
which they have attached their whole fortunes and interests
may be taken from them by an absolute exercise of imperial
power, and their whole circumstances and situation in life
may be entirely altered for a sum of money to be fixed by
somebody else \* \* \* The hardships imposed on indi-
viduals, I think, and I am glad to think, has of late years
been subject to a more anxious consideration than it used to
be. Probably the frequency of applications for such acts of
parliament and the vast expense of the works have occasioned
that particular consideration \* \* \* It would be a
strong measure indeed to allow men's property to be sum-
marily taken from them, on the notion of the general benefit,

when the parties taking it have not done those things which are incumbent on them to secure their capacity and ability to complete the whole undertaking." Lord Langdale, M. R., in *Gray v. Railway Co.,* 9 Beav., 391.

"So high a prerogative as that of divesting one's estate against his will should only be exercised when the plain letter of the law permits it, and under a careful observance of the fomalities prescribed for the owner's protection." Cooley Const. Lim., 763.

"All grants of power by the government are to be strictly construed, and this is especially true with respect to the power of Eminent Domain, which is more harsh and peremptory in its exercise and operation than any other, one judge saying, 'An act of this sort deserves no favor; to construe it liberally would be sinning against the rights of property.'" Lewis Em. Dom., 254.

"In construing statutes which are claimed to exercise the right of Eminent Domain, a strict, rather than a liberal construction is the rule. Such statutes assume to call into active operation a power, which, however essential to the existence of government, is in derogation of the ordinary rights of private ownership and of the control which an owner usually has of his property." Matter of Bridge Co., 108 N. Y., 483.

I have noted the expressions of these jurists and authors both in this country and in England (and hundreds more of like import can be found) to emphasize the fundamental rule of construction of statutes conferring upon corporations, either public or private, the power of eminent domain in respect to the matter of procedure. In the light of the decisions of this court, beginning with *Railroad v. Davis,* 19 N. C., 451, I concede that the Legislature may confer upon a corporation, having the right to condemn, the power to enter upon the land and subject it to the burden before compensation is made. In this opinion I do not care to controvert the proposition that power to enter may be conferred

even before the assessment of damage is made. For the purpose of this discussion, I fully concede the right, in as full and complete measure, as it is asserted in the opinion of the court. My dissent is based upon the construction of the statute. While I do not concede the necessity of invoking the rule, I insist that, in the light of authority and upon sound reason, the statute must be construed strictly and all reasonable doubt resolved in favor of the owner.

It is said that the power to condemn is political and not judicial, and from this proposition, which is conceded, the conclusion is reached that immediately upon the exercise of the power, by a declaration of condemnation, the right to enter upon and occupy the property is vested in the corporation without notice to the owner; that the institution of proceedings fixing the compensation and providing for the payment, is secondary both in point of time and importance. It seems to be conceded that the owner is entitled to some sort or kind of notice at this time. However this may be, the proposition, startling to the citizen who has been educated in the belief that he lives under a government of laws and not of men, has judicial warrant for its support. It would serve no good purpose to discuss the foundation of this power, which resides in all forms of government. In view of the fact that the power is conferred upon all sorts and kinds of corporations at every session of the General Assembly, it would seem wise to require a substantial, if not a strict compliance with the requirement of the statutes in regard to procedure by which the State parts with and delegates to others the exercise of this sovereign power, so vitally concerning the rights of the citizen and the honor of the sovereign.

The real question in this case is whether the charter of the town of Creedmoor confers upon the authorities the power to enter upon the property of the citizen until it is condemned, and whether it is condemned until the assessment

of damages is made by the persons and in the manner pre-
scribed by the charter. Section 17, chapter 398, Private
Laws 1905, being the charter of the town, provides that
whenever it shall become necessary to condemn land for
streets, the value of such land shall be assessed by "three
freeholders of said town   *   *   *   one of said appraisers
shall be appointed by the board of commissioners of said
town, one by the landowner or his agent, and the third to be
selected by the two so appointed." It is provided that the
appraisers shall be sworn and shall file their report with the
mayor within one week after the appraisement, etc. "Said
report shall be signed by not less than two of the appraisers,
and shall lie in the mayor's office for ten days and be sub-
ject to the inspection and examination of the landowner or
his agent, and unless an appeal is taken, and such appeal
shall lie to the Superior Court of Granville County in term
time, during said period of ten days by the town or the land-
owner, the said land so appraised shall stand *condemned*
for the use of the town, and the price fixed by the appraisers
shall be fixed from the funds of the town."

It will be observed that no power is expressly conferred
upon the officers of the town to enter upon the land and
open a street. Of course such power is incident to condem-
nation and need not be expressly given.

I find in several charters granted to railroad companies in
this State, the power to enter upon the land and construct
the road before condemnation proceedings are instituted.
Such power is given in the charter of the Raleigh & Gaston
Railroad Company, which was before the court in *Railroad
v. Davis, supra.* In the charter of the Wilmington & Ral-
eigh, afterwards the Wilmington & Weldon Railroad Com-
pany, no such power is given; on the contrary, it is provided
that if it be necessary to take land a petition shall be filed,
etc.; after providing for the assessment of damages, etc., it
is said that the corporation may "thereupon, and also if

no damage is due, enter upon the land and construct, etc."
Power of entry to make surveys is given before condem-
nation. Section 49 of The Code, providing for the organiza-
tion of railroad companies and prescribing the manner in
which they shall proceed to condemn land, contains this lan-
guage: "If the said company, at the time of the appraisal,
shall pay into court the sum appraised by the commissioners,
then and in that event the said company may enter, take
possession of and hold said land, notwithstanding an ap-
peal, etc. Section 1945. I note the provisions of these
charters to show that when the Legislature intended to confer
the right to enter before the assessment is made or the damage
paid, it has so declared in express terms.

In this case, it is found by the special verdict that the
commissioners met on May 16, 1905, and adopted a resolu-
tion declaring that it was necessary and convenient for the
public that a street be opened through the land of Rogers,
appointing an appraiser on the part of the town and direct-
ing that the owner be notified to appoint an appraiser, and
fixing the time at which they should meet and assess the
damage. The owner was notified by the mayor. He de-
clined and refused to select an appraiser. Thereupon, on
May 24, 1905, the board of commisisoners selected a second
appraiser to act with the one formerly appointed. The two
selected a third appraiser, and the three persons thus se-
lected went upon the premises and laid out the street, not in
conformity to the resolution, and assessed the damages.
They filed their report on May 25, 1905. At a meeting of
the board on May 27, the report was adopted, and on the
29th the prosecutor gave notice of an appeal. The report
stated that they had taken 250 feet of land; whereas the
true quantity included in the street was 800 feet. On the 29th
of May the defendants entered upon the land in the manner
set forth in the special verdict.

The correctness of the judgment below depends upon the

answer to the question, whether the land stood condemned on
the 29th of May; and the answer to this is dependent upon the
question, whether by the resolution of May 16, 1905, the land
stood condemned. It cannot be successfully contended that
any right of entry was given in the charter until condemna-
tion was had. It would seem that the plain language of the
statute would put an end to the controversy. When the
appraisers have been appointed, have acted, and the report
of their action has been in the mayor's office ten days, elim-
inating the provision in regard to an appeal, *"the said land
so appraised shall stand condemned,"* etc. The charter is
the authority and the only authority by which the power is
conferred, and by which its terms and extent are to be meas-
ured. How is it possible for the court to say that this lan-
guage is of no effect. Was it not most natural for the
prosecutor to put the only reasonable construction upon this
plain language and to assert his ownership, until, by the law
of the land, he has been divested of it? If the land stood
condemned by the resolution, why should the Legislature
have done a vain thing and declared that land already con-
demned should again "stand condemned?" If by the resolu-
tion of May 16, 1905, his land had been taken, it is immate-
rial for the purpose of this appeal to enquire whether the ap-
pointment by the board of two appraisers, when the statute
empowered it to select only one, was authorized. If, on the
contrary, the appointment and action of the appraisers are
essential to the completion of the condemnation, it is im-
portant to enquire whether the refusal of the land owner
to choose an appraiser, conferred the power on the board to
do so. It is said that he was stubborn and by his stubborn-
ness forfeited his right to have his property condemned
according to the charter. The record does not disclose why
the owner of the land refused to name an appraiser, nor is
it of any moment in the decision of this case. It is sufficient
to say, conceding that he was stubborn, this did not author-

ize the defendants to proceed otherwise than in accordance with the law, to take his property. Some of the most sacred rights of person and property have been preserved by men who were stubborn. Doubtless Hampden was so considered when he resisted the payment of ship money. We may not dismiss a man's cause because in our opinion he was stubborn. If those upon whom the Legislature has conferred the right to exercise the highest acts of sovereignty, fail to proceed according to the charter, the citizen not only has a right, but it is his duty to be stubborn.

I do not question the motives of the defendants. I presume they were acting in good faith. But when we deal with the sacred rights of person and property, nothing short of full and complete authority will justify.

In other charters directing the appointment of appraisers, as this does, provision is made for the appointment by the sheriff or clerk, if the owner of the property refuses to name an appraiser. It is no answer to the objection that the law has not been complied with, to say that it is the fault of the property owner. The charter is the guide for the corporation. The Legislature has prescribed the terms upon which and the manner in which the corporation must accept the authority; the citizen is not consulted; he is told that the condemnation of his property is the exercise of sovereign power, and he is not entitled to be heard. Certainly, when he finds that in delegating that power to a corporation, the Legislature has fixed the tribunal, provided for its selection and prescribed the manner in which his property is to "stand condemned," he may make this last stand for his rights, and should not be told that it is immaterial whether the corporation observes the provision of the charter. I respectfully, but firmly, insist that this is to dispense with fundamental principles founded upon the experience of the ages. I am at a loss to see what right the commissioners had to select two appraisers when the charter gave them power to select only

one.  That the manner of selecting the appraisers when prescribed by the charter is essential, and compliance therewith, a condition precedent to condemnation is abundantly sustained by the authorities.  In *Loucheim v. Hemsley,* 59 N. J. L., 149, the statute directs that the appraisers be of different political parties.  The court said: "Neither in the communication nor in the minutes is any reference made to the statutory qualifications of the commissioners.  This omission is fatal.  A special authority delegated by statute to particular persons to take away a man's property and estate, against his will, must be strictly pursued, and must appear to have been so pursued on the face of the proceedings in which the authority is exercised."

In *Fore v. Hoke,* 48 Mo. App., 254, the statute required the petition for condemnation and assessment to set forth that the parties could not agree.  The petition failing to do so, the court said that the averment was jurisdictional.  In *Adams v Clarksburg,* 23 W. Va., 203, *Woods, J.,* says:  "The taking of private property for public use, without the owner's consent can only be justified for the uses *in the modes upon the conditions and by the agencies* prescribed by law for its appropriation.  Whenever the private property of an individual is to be divested by proceedings against his will, a strict compliance must be had with all the provisions of law which are made for his protection and benefit, or the proceeding will be ineffectual.  These conditions must be regarded as conditions precedent which are not only to be observed and complied with *before the right of the property owner is disturbed,* but the party claiming authority under the adverse proceeding must show affirmatively such compliance.  All the authorities concur in holding, that as private property can be taken against the consent of the owner, only in such cases, and by such proceedings as may be specially provided by law, and as these proceedings are contrary to the course of the common law, and are in derogation of common right, they are to be

strictly construed and that the party who would avail him-
self of this extraordinary power, must comply fully with all
the provisions of the law entitling him to exercise it." In
this case a provision required ten days' notice to be served
on the owners before the court could appoint the commis-
sioners. The court held that a failure to give the notice ren-
dered the proceeding void. This, because the statute required
the notice. In *Madden v. L. & N. R. R.*, 66 Miss., 258, the
statute provided that the commissioners be "disinterested."
The court said: "This being the case, it is material to the
validity of the *appropriation* that a strict compliance with the
terms of the charter be apparent in the record. It nowhere
appears, either in the appointment of the commissioners, in
their return, or in any order entered therein that they were
"disinterested." And if they were not, there has not been
any condemnation of the land. This case was upon a "sug-
gestion of error," re-argued, and the decision affirmed. In
*Mitchell v. R. R.*, 68 Ill., 286, it is said: "It is a sound and
inflexible rule of law, that when special proceedings are
authorized by statute by which the estate of one person may
be divested and transferred to another, every material pro-
vision of the statute must be complied with. The owner has
the right to insist upon a strict performance of all the ma-
terial requirements, and especially those designed for his se-
curity, and the non-observance of which may operate to his
prejudice." In *Paret v. Bayonne,* 139 N. J. L., 559, *Depue,
J.,* says: "The officers of a corporation are agents, with only
special powers such as are delegated to them by the act of
incorporation, or such as are necessarily implied from the
powers delegated.   *   *   *   In the performance of these
functions they are required to conform strictly to the method
of procedure prescribed." In *Stewart v. Wallis,* 30 Barb.,
344, it is said: "The form by which private property may be
taken for public purposes, having been prescribed, it must be
strictly pursued, or the attempt will be ineffectual and the

proceeding void, and all persons acting under the color of them will be trespassers." We may apply the words of the court in *Chi. & Alt. R. R. Co. v. Smith,* 78 Ill., 96, to all works of public character. "Whilst all persons at that day were desirous to see railroads constructed, it was not intended that it should be done at the sacrifice of all private rights. Those acting for the company knew, or should have known, that, in acquiring their right of way they were pursuing an extraordinary and summary remedy and, in doing so, the law imperatively demanded that they should observe all of the requirements of the statute under which they were acting. And this is a requirement which lies at the foundation of our system of jurisprudence." *Railroad v. Railroad,* 106 N. C., 16; 15 Cyc., p. 815. This is probably the first instance in which the property of the citizen has been taken against his consent, and its value fixed by appraisers, two of whom are selected by the party taking, they selecting the third. I submit that to sustain it is destructive of elementary principles of natural justice, and judicial procedure. It is no answer to say to the citizen deprived of his property at a valuation fixed by appraisers so appointed, that he may appeal. He is entitled in the first instance and at every step in the proceeding to demand a strict observance of the written law. The provisions in regard to the mode of procedure before the land shall "stand condemned," are not empty forms; to so construe them puts the State in the attitude of keeping the promise to the ear, and breaking it to the sense. Let us suppose a similar provision in the charter of a railroad company or telegraph company, in regard to the appointment of appraisers, and there is no difference in principle, would it be contended that, if the owner, feeling that his rights were being unlawfully or unjustly invaded, refused to name an appraiser, that a superintendent, or other officer of the corporation could name two of the appraisers, and say to the owner if he was not satisfied, he could appeal. I do not so understand the

guaranties which the law throws around the citizen.   The
right to appeal is of value and not to be denied, but the right
of the citizen to demand at all stages of the proceeding, due
process of law, is not to be denied or abridged.

The appeal suspended further action by the board.   It is
usually provided that if the corporation deposit the amount
of the award, an appeal shall not suspend the right of entry.
I see no reasonable objection to such a provision.   It is said,
however, that the question is settled by this court in *State v.
Lyle,* 100 N. C., 497.   The extent to which a question be-
comes closed, and is crystallized into positive law by a single
decision binding upon the same court, is often difficult to de-
fine.   Without undertaking to do so, I think it permissible
and safe to say that it should not extend beyond the clear and
unmistakable language of the judge who writes the opinion.
I should feel myself bound, both by reason of my respect for
the opinion of the learned Chief Justice who wrote, and the
Associate Justice who concurred in that opinion, as well as
the learned judge who tried the case below, unless my convic-
tions were so strong, that to adopt the conclusion did violence
to my sense of duty as a judge.   I do not think that I am
placed in this embarrassing position in respect to that case.
Fully conceding that it is permissible to cite the case as in
some measure sustaining the conclusion reached by the court,
I think that a careful examination of the opinion discloses
that the question upon which this case turns, is not considered
or decided.   *Smith, C. J.,* says: "The controversy in the
present case turns upon the construction of the charter, which
has been recited in full, and whether, in providing the method
for ascertaining the compensation to be paid the owner, and
the means by which it is to be done, a *prepayment* is neces-
sary before the property can be taken, and this following the
condemnation in the mode pointed out in the enactment."
The discussion following this statement of the question in
controversy, shows clearly that no other question was in the

mind of the writer.   This view is strengthened by the concluding portion of the opinion—citing *Judge Cooley* to sustain the proposition·that the corporation may, if authorized, take *"without first making payment."*   (Italics in opinion). This is the only question discussed or decided, and, as said, it is not controverted.

In *Freedle v. Railroad,* 49 N. C., 89, and in *McIntyre v. Railroad,* 67 N. C., 278, the question presented here did not arise.   In *Johnston v. Rankin,* 70 N. C., 550, the charter of Asheville is not set out.   The only point *decided* in respect to the right to proceed with the work, is that the law did not require compensation paid before the taking.   If, as contended, these cases hold that, without clearly expressed power in the charter, a board of town commissioners, or directors of a private corporation may, without notice to the owner, locate a street or road on his property, and immediately, without other notice to him than the appearance of a number of men on his premises, tear away his houses and fences, cut down his trees and take his property, then I most respectfully but earnestly dissent from them.   To sustain the exercise of such arbitrary power, there should be unmistakable language used in the statute.   How far the Legislature may permit it, is not, in my opinion, a closed question.

It may be said that it is of little importance to the owner, whose property is taken by an *ex parte* exercise of political sovereignty, either by a board of town commissioners or a board of non-resident directors of a corporation, to whom has been delegated this sovereign power, how, when or by whom the assessment is made; and it must be conceded that much judicial warrant is found to sustain the position.   I cannot hope to change the current of judicial thought in this court, and it is doubtless a vain assumption on my part to question its correctness.   I hope, however, that another department of the government, to which it seems the citizen must look to safeguard his rights in this respect, will come to a state of

mind which will enable us to say, in the language of the English Court of Chancery, "the hardship imposed on individuals, I think, and I am glad to think, has of late years been subject to a more anxious consideration than it used to be." The material wealth and prosperity of the country should, and we hope will, continue to grow. The great principles by which the security of life, liberty and property has been preserved, the preservation of which is so essential, and has contributed so largely to the present happy condition in which we live, may not be either sacrificed or in the slightest degree weakened by the demands of corporations, either public or private, to trespass upon the land of the citizen, otherwise than is permitted by the clearly expressed will of the lawmaking power. A man's land should "stand condemned" when, and only when, every step, which the law prescribes to that end, has been taken. Every reasonable doubt should be resolved in favor of the citizen. It is well known that charters are obtained by those most interested in securing the largest delegation of power possible. The owner, whose property is to be condemned, has no opportunity to be heard. The constitutional provision requiring notice of the introduction of private laws, has, by custom and construction, been practically abrogated.

Holding, therefore, that the assessment was of the essence of the condemnation proceeding, I am forced to the conclusion that the land did never "stand condemned" because there was never any lawfully constituted appraisers, and that the report should not under the terms of the charter be confirmed, until the expiration of ten days. It would seem also that power is ever aggressive and often indifferent to individual rights.

Recognizing these truths taught by experience, the courts have wisely declared that all grants of power are to be construed strictly against the grant, and liberally in favor of the citizen.

In my opinion, under the clear terms of the charter, the land of the prosecutor did not "stand condemned" on May 29, 1905, and the entry thereon by the defendants was a trespass.

There are other phases of the case which I do not care to discuss. I do not dissent from what is said in regard to notice given.