***********
The undersigned reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Hall. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission affirms and modifies the Opinion and Award of Deputy Commissioner Hall.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act.
2. An employee-employer relationship existed between the named employee and named employer.
3. The carrier liable on the risk is correctly named above.
4. The employee's average weekly wage will be determined from an I.C. Form 22 Wage Chart.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, Plaintiff was 28 years old and had completed more than three years of college. Plaintiff testified that he was five feet nine inches tall and weighed between 340 and 360 pounds.
2. Plaintiff began working for Defendant on May 31, 1994. Plaintiff was working as a package car driver for Defendant at the time of the alleged injury.
3. Plaintiff presented to Dr. Dan Opperman, a podiatrist, on December 27, 2000 complaining of right ankle pain. Plaintiff had no history of right ankle problems prior to December 27, 2000. X-rays of the right ankle revealed some evidence of degenerative changes on the dorsal tarsal region and around the ankle. Dr. Opperman's diagnosed Plaintiff with degenerative arthritis.
4. The top portion of a February 5, 2001 disability form received into evidence as part of the stipulated medical records indicates that Plaintiff's disability was not due to an accident, did not occur on the job, and that the disability is in no way job related.
5. After seeking medical attention in December 2000, Plaintiff continued to work for Defendant in the same position and duties as a package car driver until August 15, 2001. Plaintiff then went out of work due to his right ankle problems. Plaintiff applied for short-term disability benefits and received $300.02 for 26 weeks.
6. On February 12, 2001, Plaintiff began treating with Dr. Robert Logel, an orthopedic surgeon. Dr. Logel testified that x-rays of Plaintiff's right ankle showed mild, early stages of osteoarthritis, which is caused by wear and tear over time of a joint surface. Dr. Logel suggested use of an orthotic to give arch support to Plaintiff's flat foot. An MRI done in June of 2001 revealed no abnormalities.
7. Dr. Logel testified that some component of Plaintiff's pain may be secondary to Plaintiff's weight and suggested Plaintiff lose weight for his orthopedic health and his general health. He stated that Plaintiff's weight contributes to his ankle condition, but did not cause the problem. Dr. Logel testified that if the job were the cause, he would expect to see bilateral problems.
8. Dr. Logel opined that Plaintiff's type of job would not lead to an individual having a greater risk than the general public of having an ankle problem like Plaintiff's. Dr. Logel stated that Plaintiff's ankle problems were unrelated to Plaintiff's job, or they were caused by pre-existing factors, and that Plaintiff's obesity contributed to his ankle condition. Finally, Dr. Logel testified that assuming that Plaintiff's job was the same as the job described in the "Ergonomic Job Analysis," Plaintiff was not at an increased risk for the development of ankle problems and that Plaintiff's job with Defendants did not place him at increased risk of developing ankle problems greater than that of the general public.
9. Due to continued problems, Plaintiff was seen by Dr. Fred Stowe, a neurologist, on July 27, 2001. Dr. Stowe examined Plaintiff and noted Plaintiff's obesity. Dr. Stowe could not diagnose Plaintiff's condition as related to any nerve problems. Dr. Stowe ordered Plaintiff to undergo nerve conduction studies. Plaintiff failed to undergo nerve conduction studies scheduled for August 7, 2001.
10. In November of 2001, Dr. Dickson Schaefer, an orthopedist, examined Plaintiff and noted that he had been diagnosed with diabetes and again discussed his weight. Dr. Schaefer stated that the "significant stress at the ankle joint is secondary to obesity." Dr. Schaefer went on to say, in December of 2001, that he was at a loss for the etiology of Plaintiff's pain
11. After seeing Dr. Schaefer and Dr. Fred Stowe, without relief, Plaintiff was referred to Dr. Mark Easley, an orthopedic surgeon.
12. On January 24, 2002, Plaintiff sought treatment with Dr. Easley and was diagnosed with right posterior tibial tendinitis and mildly symptomatic right OS trigonum. Dr. Easley recommended physical therapy and light duty.
13. In a February 5, 2002 letter, Dr. Easley stated that "Mr. Pointe's right foot and ankle injury occurred in December of 2000, and I believe this injury is directly related to his work responsibilities that require the repetitive motion of stepping in and out of the delivery truck which he drives." However, Dr. Easley testified more specifically that if Plaintiff did not suffer the ankle condition injury prior to working for Employer-Defendant, Plaintiff's job does not put him at an increased risk for the ankle injury. Dr. Easley acknowledged that his original opinion concerning causation of Plaintiff's injury was based on an assumption that Plaintiff suffered an injury by accident, not that the injury was caused by repetitive stress syndrome.
14. Dr. Easley released Plaintiff to return to full duty on April 30, 2002 at Plaintiff's request.
15. Plaintiff sought treatment with Dr. Easley again in June 2002 and he recommended physical therapy three times a week for six weeks. In August 2002, Dr. Easley recommended a weight loss program and a water aerobics program. On December 26, 2002, Plaintiff presented to Dr. Easley about his ankle and indicated that he could not return to his full duties.
16. Dr. Easley testified that during his examination of Plaintiff, he observed Plaintiff had "flatter feet." Dr. Easley recognized Plaintiff's flat feet and morbid obesity as contributing factors to Plaintiff's ankle problems.
17. Dr. Easley eventually opined that if an individual did not have the specific injury Plaintiff suffered prior to engaging in the type of work Plaintiff did for Employer-Defendant, that individual would not be at an increased risk for the development of problems of the ankle.
18. Al Gorrod, a Certified Ergonomic Evaluation Specialist, testified concerning the ergonomic factors associated with Plaintiff's work at Defendant-Employer. Mr. Gorrod prepared an "Ergonomic Job Analysis" which was introduced into evidence at the hearing before the Deputy Commissioner. The "Ergonomic Job Analysis" and Mr. Gorrod's testimony reflect Mr. Gorrod's methods for determining the risk factors associated with Plaintiff's job.
19. Mr. Gorrod testified, at the hearing before the Deputy Commissioner, that it was his opinion that Plaintiff's job did not place him at an increased risk for the development of ankle problems. Mr. Gorrod based this opinion on his findings that the risk factors for the job were in control, there were not "extremes" of any ergo stressor present, and no high-rated (adverse) ergonomic problems or issues were present. He further stated in the "Ergonomic Job Analysis" that there were "no objective findings to support or indicate a correlation between the job and the reported Cumulative Trauma Disorder (CTD) condition arising solely and singularly from conduct of the physical demands of this job."
20. The undersigned find that Plaintiff's job duties did not place him at an increased risk above members of the general public for the development of an occupational disease, as Plaintiff did not produce sufficient evidence to prove that his job duties placed him at an increased risk. Dr. Logel opined that Plaintiff's job did not put him at an increased risk of developing the ankle condition and that the cause of the ankle condition was pre-existing or non-work related forces, such as Plaintiff's morbid obesity. Mr. Gorrod's testimony and "Ergonomic Job Analysis" show that based on an objective analysis of a vehicle similar to the one Plaintiff used while working, Plaintiff's work was not the sole cause of Plaintiff's injury and did not put him at an increased risk for development of the ankle condition. Dr. Easley's opinion, after correcting his assumptions, was that Plaintiff's job did not put him at an increased risk for the ankle condition.
21. Based on the Form 22 submitted in this matter, Plaintiff's average weekly wage was $796.88, yielding a compensation rate of $531.27.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff did not sustain a compensable injury by accident arising out of and in the course of his employment with Defendant-Employer in December of 2000. N.C. Gen. Stat. §97-2(6).
2. The Plaintiff bears the burden of proving each element of compensability in order to prove the existence of an occupational disease within the meaning of N.C. Gen. Stat. § 97-53(13). This requires the Plaintiff to show that (1) the disease must be characteristic of a trade or occupation; (2) the disease must not be an ordinary disease of life to which the public is equally exposed outside of the employment; and (3) there must be proof of causation. Hansel v. Sherman Textiles, 304 N.C. 44,283 S.E.2d 101 (1981). In the instant case, Plaintiff has failed to establish these elements by competent evidence.
3. Plaintiff has failed to prove by the greater weight of the evidence that his employment with defendant-employer exposed him to a greater risk of developing his right ankle condition as compared to the general public. N.C. Gen. Stat. § 97-53(13);Rutledge v. Tultex Corp., 308 N.C. 85, 301 S.E.2d 359 (1983);Norris v. Drexel Heritage Furnishings, Inc., 139 N.C. 620,534 S.E.2d 259 (2000); Futrell v. Resinall, 151 N.C. App. 456,566 S.E.2d 181, affirmed, 357 N.C. 158, 579 S.E.2d 269 (2003).
4. Plaintiff has failed to carry his burden of proof. Therefore, Plaintiff is not entitled to recover benefits under the Act. N.C. Gen. Stat. §§ 97-53(13); 97-2(6).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Plaintiff's claim is hereby denied.
2. Each party shall pay their own costs.
This the ___ day of August, 2004.
 S/_____________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER