* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before the Deputy Commissioner and the briefs and oral argument before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence; to receive further evidence or to rehear the parties or their representatives; accordingly, the Full Commission affirms, with modifications, the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. It is stipulated that all parties are properly before the North Carolina Industrial Commission and that the Industrial Commission has jurisdiction of the parties and of the subject matter.
2. It is stipulated that all parties have been correctly designated and that there is no question as to the misjoinder or nonjoinder of parties.
3. The parties stipulate and agree that the following facts shall be and are fully established for the purposes of this proceeding:
 a. The parties are bound by and subject to the North Carolina Workers' Compensation Act; b. At all times relevant hereto, the employment relationship existed between the Employee and Employer; c. Employer is self-insured and Gallagher Bassett is the servicing agent; d. Plaintiff's average weekly wage is $759.20 and plaintiff's weekly workers' compensation rate is $506.13.
 * * * * * * * * * * * EXHIBITS
The following documents were accepted into evidence as stipulated exhibits:
 Exhibit 1: Executed Pre-Trial Agreement
 Exhibit 2: Industrial Commission forms, medical records, plaintiff's discovery responses and material handler job description
The following documents were accepted into evidence as plaintiff's exhibits:
 Exhibit 1: Brochure depicting a stand-up forklift similar to the one plaintiff used
The following documents were accepted into evidence as defendants' exhibits:
 Exhibit 1: Photograph of man operating stand-up forklift
 Exhibit 2: Close-up photograph of man's left forearm as he operates stand-up forklift
 Exhibit 3: Plaintiff's earnings statements
 Exhibit 4: Page from Employer's handbook describing Employer's short-term disability insurance
Transcripts of depositions of the following were also received post-hearing: Amie T. Collins, PA and Dr. Michael D. Lauffenburger.
 * * * * * * * * * * *
Based upon all of the competent credible evidence of record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, the plaintiff was 40 years old. The plaintiff began working for the defendant in approximately 1996.
2. In 2003 and most of 2004, plaintiff was employed by defendant-employer as a material handler and in this job plaintiff drove a stand-up forklift for about seven and a half hours per day.
3. In August 2003, plaintiff began noticing pain in her left shoulder, which she reported to her co-worker, Chad Caldwell. The plaintiff described her shoulder pain as feeling like a grinding sensation in the top back of her shoulder with stinging and burning from her shoulder to her back.
4. Plaintiff continued to work with the pain. However, in September 2004, the pain became bad enough that plaintiff reported it to her supervisor, Ed Cansler.
5. Mr. Cansler told plaintiff to present to the acting company nurse, Eric Moser. Mr. Moser sent the plaintiff to physical therapy, but physical therapy did not ease plaintiff's pain. The plaintiff testified at the hearing before the Deputy Commissioner that upon reporting this subsequent information to Mr. Cansler, he instructed her to see her own family physician.
6. On September 29, 2004, plaintiff presented to the office of her personal physician, Dr. Cecil Farrington. However, plaintiff was actually evaluated by Amie Collins, a physician's assistant. Plaintiff complained of left shoulder pain and noted that she drove a forklift at work. Ms. Collins assessed plaintiff as having probable bursitis and/or tendonitis in her left shoulder, prescribed medications and took plaintiff out of work for one week.
7. Plaintiff returned to Ms. Collins on October 28, 2004 with continuing complaints of left shoulder pain. Ms. Collins referred plaintiff to Dr. Robert Steele at Salisbury Orthopaedic Associates.
8. On November 2, 2004, plaintiff presented to Dr. Steele reporting that her left shoulder pain had been "going on off and on for a year." Plaintiff further reported that "she has had no real trauma but she does a lot of repetitive use of the arm in the workplace overhead and just constant use of the arm running a forklift." Dr. Steele diagnosed plaintiff as having probable impingement syndrome and Dr. Steele placed plaintiff on work restrictions and gave plaintiff an injection and medications.
9. Plaintiff returned to Dr. Steele on December 6, 2004 and her condition had not improved. Consequently, Dr. Steele scheduled an MRI for plaintiff and referred her to Dr. Michael Lauffenburger, an orthopeadist.
10. Plaintiff's left shoulder MRI on December 9, 2004 was normal and on December 15, 2004 plaintiff presented to Dr. Lauffenburger. Dr. Lauffenburger diagnosed chronic impingement and, noting that all conservative measures had failed, scheduled plaintiff for surgery.
11. On December 23, 2004, plaintiff underwent left shoulder surgery with Dr. Lauffenburger, who found a partial thickness rotator cuff tear, severe chronic bursitis and a bone spur.
12. Following surgery, Dr. Lauffenburger kept plaintiff out of work through March 14, 2005. Plaintiff returned to work full duty on March 15, 2005 with defendant-employer as a parts checker.
13. At the hearing before the Deputy Commissioner, plaintiff testified that she drove a CAT stand-up forklift that had a steering wheel on the left-hand side and the accelerator on the right front and introduced an exhibit depicting a stand-up forklift similar to the one plaintiff used. Plaintiff further testified at the hearing before the Deputy Commissioner that she steered the forklift using her left hand, that when operating the forklift she held her left arm so that her upper arm hung essentially straight down, her arm was bent at the elbow, and her forearm was in front of her body, with her left hand resting on the steering wheel.
14. Scott Razzino, Environmental Health and Safety Manager for defendant testified at the hearing before the Deputy Commissioner. Mr. Razzino testified that he had intimate knowledge of employee-plaintiff's position as a material handler and the stand-up forklift employee-plaintiff drove. Mr. Razzino testified that he was familiar with the specific forklift due to training employees to obtain their driver's certificates. He testified that the stand-up forklift had power steering. Mr. Razzino also testified that due to the layout of employer-defendant's plant, there was not a significant amount of turning involved while driving the stand-up forklift and that most often the stand-up forklifts were driven straight down the length of the plant. Mr. Razzino also testified that there has never been a claim for a rotator cuff tear from any employee who worked as a material handler for employer-defendant and he had never heard of a rotator cuff tear caused by driving similar stand-up forklifts. The defendant also introduced exhibits depicting a man operating a stand-up forklift and a close-up photograph of a man's left forearm as he operates a stand-up forklift.
15. Dr. Lauffenburger testified that the general factors for whether any forklift can put a person at greater risk of a rotator cuff tear includes the position of the steering wheel, the seat and height of the driver, the elevation, the position of the driver's arm, and the amount of pressure the driver had to use to steer the forklift. Dr. Lauffenburger repeatedly testified that a large factor in developing a rotator cuff tear over time was whether the arm was in front of a person's body while the shoulder supported the weight of the arm. Dr. Lauffenburger testified that power steering would lessen the risk of injury and that the fewer turns a person had to make, the less the risk of injury.
16. Dr. Lauffenburger further testified that he made no independent investigation of the stand-up forklift driven by plaintiff and during his deposition he spoke generally about forklifts. There is no evidence of record that Dr. Lauffenburger has ever seen or examined the stand-up forklift driven by plaintiff.
17. Dr. Lauffenburger repeatedly stated that the largest factor in developing a rotator cuff tear over time was holding the arm in front of the body while supporting the weight of the arm with the shoulder, a position that both employee-plaintiff's and employer-defendant's exhibits demonstrated was not the case for employee-plaintiff's stand-up forklift. The competent evidence in the record establishes that the stand-up forklift employee-plaintiff drove did not require her to extend her arms in front of her body and support the weight of the arms with her shoulders. Dr. Lauffenburger's testimony is not specific to employee-plaintiff's employment position.
18. Dr. Lauffenburger failed to opine whether forklifts place employees at a greater risk than the public for developing rotator cuff tears.
19. The competent evidence in the record fails to establish that the specific stand-up forklift driven by plaintiff caused rotator cuff tears or that rotator cuff tears are more prevalent in forklift drivers than the general public.
20. The Full Commission finds that there is insufficient competent evidence in the record to establish that the plaintiff's left shoulder condition was due to causes and conditions that were characteristic of or peculiar to her employment with defendant-employer or that the plaintiff's job placed plaintiff at an increased risk for contracting a shoulder injury while performing her job with defendant-employer as compared to members of the general public.
21. The Full Commission finds that there is insufficient competent evidence in the record to establish that plaintiff sustained a traumatic event that may have caused an injury by accident to her left shoulder.
 * * * * * * * * * * *
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. The plaintiff bears the burden of proving each element of compensability in order to prove the existence of an occupational disease within the meaning of N.C. Gen. Stat. § 97-53(13). This requires the plaintiff to show that (1) the disease must be characteristic of a trade or occupation; (2) the disease must not be an ordinary disease of life to which the public is equally exposed outside of the employment; and (3) there must be proof of causation. Hansel v. ShermanTextiles, 304 N.C. 44, 283 S.E.2d 101 (1981). In the instant case, plaintiff has failed to establish these elements by competent evidence.
2. Plaintiff has failed to prove by the greater weight of the evidence that her employment with defendant-employer exposed her to a greater risk of developing an occupational disease as compared to the general public. N.C. Gen. Stat. § 97-53(13); Rutledge v. Tultex Corp.,308 N.C. 85, 301 S.E.2d 359 (1983); Norris v. Drexel Heritage Furnishings,Inc., 139 N.C. 620, 534 S.E.2d 259 (2000); Futrell v. Resinall,151 N.C. App. 456, 566 S.E.2d 181, affirmed, 357 N.C. 158, 579 S.E.2d 269
(2003).
4. Plaintiff has failed to carry her burden of proof. Therefore, plaintiff is not entitled to recover benefits under the Act. N.C. Gen. Stat. § § 97-53 (13), 97-2(6).
 * * * * * * * * * * *
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim is hereby, and the same shall be, DENIED.
2. Defendants shall pay the costs of this action.
This the __ day of November 2006.
 S/___________________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/___________________ BUCK LATTIMORE CHAIRMAN